**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| **BEXAR COUNTY, TEXAS,** **ON BEHALF OF ITSELF AND ALL** **OTHER SIMILARLY SITUATED** **COUNTIES IN TEXAS** <br><br> Plaintiff, <br><br> **vs.** <br><br> **MERSCORP, INC.; MORTGAGE** **ELECTRONIC REGISTRATON SYSTEMS,** **INC.;** AND **BANK OF AMERICA,** **NATIONAL ASSOCIATION** <br><br> Defendants. | CIVIL ACTION NO. *5:12-CV-00586* |

---

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

---

TO THE HONORABLE JUDGE OF THE COURT:

COMES NOW Bexar County, Texas ("Plaintiff"), on behalf of itself and all other similarly situated Texas counties ("Plaintiffs" or "Class Members"), complaining of MERSCORP, INC.; MORTGAGE ELECTRONIC REGISTRATON SYSTEMS, INC.; and BANK OF AMERICA, NATIONAL ASSOCIATION (individually and as success-in-interest to COUNTRYWIDE HOME LOANS, INC.) (collectively, "Defendants"), and would show the Court as follows:

## I.
### STATEMENT OF THE CLAIMS

1.    Defendants are members of the mortgage finance industry. Defendants have violated Texas statutes and common law when Defendants falsely denominated Mortgage Electronic Registration Systems, Inc. ("MERS") as a "beneficiary" on deeds of trust or "lender"

1

in releases or assignments filed of record in the deed records of Plaintiffs so that MERS would be designated as a "grantor" or "grantee" in Plaintiffs' Statutory Grantor/Grantee Indices. Plaintiffs also allege that Defendants violated Texas law when they failed to properly record releases, transfers, assignments, and/or other actions relating to deeds of trust in which MERS was identified as a "beneficiary."

2.     Plaintiffs allege that each Defendant was an active participant in the misconduct alleged, and that each Defendant was a co-conspirator in such misconduct.

## II.
## PARTIES

3.     Plaintiff Bexar County, Texas, is a county, duly formed and existing under the laws of the State of Texas.  Plaintiff makes the allegations contained in this complaint on behalf of itself and all Class members.

4.     Defendant MERSCORP, INC. ("MERSCORP") is a Delaware corporation. MERSCORP is a nonresident who engages in business in this state, but does not maintain a regular place of business in this state or a designated agent for service of process. Plaintiffs' claims against MERSCORP arise out of MERSCORP's activities in Texas, including Bexar County, Texas. MERSCORP will be served by serving William Beckmann, President and Chief Executive Officer, MERSCORP, INC., 1818 Library Street, Suite 300, Reston, Virginia. At all times material hereto Defendant MERSCORP has engaged in business in Texas, including Bexar County, Texas, and committed a tort, in whole or in part, in Texas, including Bexar County, Texas; and the claims made herein arise out of such activities in Texas. Further, until November 10, 2010, MERSCORP was registered to do business in the State of Texas.

5.     Defendant MORTGAGE ELECTRONIC REGISTRATON SYSTEMS, INC. ("MERS") is a Delaware corporation and a wholly-owned subsidiary of Defendant MERSCORP.

2

MERS engages in business in Texas, including Bexar County, Texas, but does not maintain a regular place of business in this state, or a designated agent for service of process for proceedings that arise out of MERS's business conducted in this state. MERS will be served by serving William Beckmann, President and Chief Executive Officer, MORTGAGE ELECTRONIC REGISTRATON SYSTEMS, INC., 1818 Library Street, Suite 300, Reston, Virginia. At all times material hereto Defendant MERS has engaged in business in Texas, including Bexar County, Texas, and committed a tort, in whole or in part, in Texas, including Bexar County, Texas; and the claims made herein arise out of such activities in Texas.

6.      Defendant BANK OF AMERICA, NATIONAL ASSOCIATION (hereinafter "BOA") is a Delaware corporation with its principal place of business in Charlotte, North Carolina. BOA will be served by serving its registered agent:  CT Corporation System, 350 N. St. Paul Street, Suite 200, Dallas, Texas 75201-4234.  BOA is also liable for the misconduct of COUNTRYWIDE HOME LOANS, INC. ("Countrywide"), as BOA is the successor-in-interest to, and assumed the assets and liabilities of Countrywide.  BOA and Countrywide shall be referred to herein collectively as "BOA."

### III.
### JURISDICTION AND VENUE

7.      Subject Matter Jurisdiction herein is based upon 28 U.S.C. §1332(d)(2)(A) because the amount in controversy far exceeds the sum or value of $5,000,000, exclusive of interest and costs, and because this is a class action in which all Class Members are citizens of a different state than the Defendants.

8.      The Court has *in personam* jurisdiction over each Defendant because each Defendant is subject to jurisdiction under the Texas Long Arm Statute, TEXAS CIVIL PRACTICE & REMEDIES CODE §17.041 *et seq.*

3

9.      Venue is based upon 28 U.S.C. §1391(a) or (b).

## IV.
## AGENCY AND CORPORATE VEIL/ALTER-EGO

10.     At all times material hereto, each Defendant was acting by and through its actual, apparent, ostensible, or by estoppel agents and/or employees.

11.     Plaintiffs move the Court to pierce the MERSCORP and MERS corporate veils and impose liability upon each Defendant shareholder in MERSCORP and MERS for the actionable conduct of MERSCORP and MERS alleged herein. As demonstrated by the facts set forth herein, recognizing the corporate existence of MERSCORP and MERS separate from their shareholders, including MERSCORP as a shareholder in MERS and BOA as a shareholder in MERSCORP, would cause an inequitable result or injustice, or would be a cloak for fraud or illegality. MERSCORP and MERS were undercapitalized in light of the nature and risk of their business; and the corporate fiction is being used to justify wrongs, as a means of perpetrating fraud, as a mere tool or business conduit for others, as a means of evading existing legal obligations, to perpetrate monopoly and unlawfully gain monopolistic control over the real property recording system in the State of Texas, and to circumvent statutory obligations.

## V.
## CLASS ACTION ALLEGATIONS

12.     The Class Members that Plaintiff seeks to represent consist of every Texas county in which Defendants have:

   a.   recorded, caused to be recorded, or approved the recording of instruments which falsely state that MERS has a lien upon or interest in real property which MERS does not have, causing MERS to be indexed as a "grantee" in the Statutory Grantor/Grantee Indexes maintained by Plaintiff and the other Class Members;

b.  recorded, caused to be recorded, or approved the recording of instruments which falsely state that MERS has a lien upon or interest in real property which MERS does not have, causing MERS to be indexed as a "grantor" in the Statutory Grantor/Grantee Indexes maintained by Plaintiff and the other Class Members; and

c.  released, transferred, assigned, or taken other action relating to an instrument that is filed, registered, or recorded in the office of the county clerk without filing, registering, or recording another instrument relating to the action in the same manner as the original instrument was required to be filed, registered, or recorded.

13.  **Numerosity**. A class action is appropriate because the Class is so numerous that joinder of all members is impracticable. There are 254 Texas counties, including Plaintiff Bexar County. Upon information and belief, the Class will consist of not less than 200 of those counties.

14.  **Commonality**. A class action is appropriate in this case because there are questions of law and fact common to the Class, including but not limited to:

a.  whether Defendants have violated Texas law by recording, causing to be recorded, or approving the recording of instruments which falsely state that MERS has a lien upon or interest in real property which MERS does not have, causing MERS to be indexed as a "grantee" in the Statutory Grantor/Grantee Indices maintained by Plaintiff and the other Class Members;

b.  whether Defendants have violated Texas law by recording, causing to be recorded, or approving the recording of instruments which falsely state that MERS has a lien upon or interest in real property which MERS does not have, causing MERS to be indexed as a "grantor" in the Statutory Grantor/Grantee Indices maintained by Plaintiff and the other Class Members;

c.  whether Defendants have violated Texas law by releasing, transferring, assigning, or taking other action relating to an instrument that is filed, registered, or recorded in the office of the county clerk without filing, registering, or recording

another instrument relating to the action in the same manner as the original instrument was required to be filed, registered, or recorded; and

d.    whether the Defendants and others acting in concert with them engaged in an unlawful conspiracy to violate the recording statutes and other laws of the State of Texas.

15.    The questions of law and fact common to the Class predominate over any questions affecting only individual counties.

16.    **Typicality**. Bexar County's claims are typical of the claims of the Class Members. The causes of action asserted by Bexar County are based upon conduct of the Defendants, which is uniform across all Class Members, and every cause of action is applicable to every Class Member. Moreover, while the number of subject instruments will be different for each Class Member, the formula for determining each Class Member's recovery is identical.

17.    **Adequacy**. Bexar County will fairly and adequately protect the interests of the Class Members. Bexar County is willing and able to represent the interests of the Class and will take an active role in and control the litigation to protect the interests of absentees.

18.    In the absence of class certification, there is a risk that (a) inconsistent or varying adjudications with respect to individual Class Members would establish incompatible standards of conduct for Defendants, or (b) adjudications in dozens of separate cases with respect to individual Class Members would, as a practical matter, be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

19.    The questions of law or fact common to Class Members predominate over any questions affecting only individual Class Members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Moreover, Defendants

have conducted themselves in such a fashion that the final injunctive relief requested herein, or

corresponding declaratory relief, is appropriate respecting the class as a whole.

## VI.
## FACTS

### A. The Public Recording System

20.     The origins and reasons for public recordation of mortgage interests in the United

States dates back to at least the middle of the 17th Century. According to one commentator:

> One of the most striking features of Anglo-American law is the
> requirement to file notice in public files of a non-possessory
> secured transaction in order to enforce the transaction in the court
> against third parties.
>
> ****
>
> Potential subsequent lenders and purchasers could then become
> aware of the debtor's prior obligation by examining the public files
> and protect themselves by taking the action they deemed
> appropriate, either not lending or charging higher interest.[1]

21.     Mortgage recordation in Texas is governed by Chapter 12 of the Texas Property

Code. Section 12.001 of the Property Code provides, in part: "An instrument concerning real or

personal property may be recorded if it has been acknowledged, sworn to with a proper jurat, or

proved according to law." Although recordation of a security instrument in real property is not

mandatory, once a security interest is recorded, "[t]o release, transfer, assign, or take another

action relating to an instrument that is filed, registered, or recorded in the office of the county

clerk, **a person must file, register, or record another instrument relating to the action in the**

**same manner as the original instrument was required to be filed, registered, or recorded.**"[2]

[emphasis added]

---

[1]  George Lee Flint, Jr. and Marie Juliet Alfaro, *Secured Transactions History: The First Chattel Mortgage Act in the Anglo-American World*, 30:4 William Mitchell Law Review 1403, 1404-05.

[2]  TEX. LOC. GOV'T CODE § 192.007.

22.     Once properly filed, a mortgage is "notice to all persons of the existence of the instrument," protects the mortgagee's (lender's) security interest against creditors of the mortgagor, and places subsequent purchasers on notice that the property is encumbered by a mortgage lien. Unless the mortgage is recorded, the "mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice."[3]

23.     Until recently, when a loan secured by a mortgage was sold, the assignee would record the assignment of the mortgage to protect the security interest. If a servicing company serviced the loan and the servicing rights were sold—an event that could occur multiple times during the life of a mortgage loan—multiple assignments were recorded to ensure that the proper servicer and/or note-holder appeared in the land records in the county clerk's office.[4] This basic model has been followed throughout the United States for over three hundred years to provide the public with notice of the ownership of, and liens encumbering, real property throughout the United States. Defendants and others similarly situated have changed all of this and destroyed the accuracy and reliability of the public deed recordation system throughout Texas and the United States.

24.     The MERS business plan, as envisioned and implemented by Wall Street, is based in large part on amending the traditional model of recording security interests in real property and changes thereto and introducing a third party into the equation—MERS.  The motivation for creating MERS was Wall Street's desire to alleviate the "inconvenience" of the public recording system and create its own privately owned shadow electronic recording system - the MERS System – to increase the velocity and ease with which mortgages could be bought and sold.  In

---

[3] TEX. PROP. CODE § 13.001(a).
[4] Some sources estimate that mortgage loans or servicing rights are transferred an average of five times or more during the life of a mortgage — transfers that would necessitate recordation.

the words of one court, the MERS System was designed "as a replacement for our traditional system of public recordation of mortgages."[5] The MERS System fails to comply with Texas law.

**B.  Wall Street Ignores 300 Years of History and Creates the "MERS System"**

25.    To facilitate the commoditization of mortgage loans and increase the velocity with which mortgages could be bought and sold, and "non-agency"[6] mortgage-backed securities ("MBSs") issued, Wall Street needed to create a mechanism that would enable it to buy and sell mortgages and mortgage servicing rights multiple times, packaged with tens of thousands of other mortgages, without the "inconvenience," expense, or time associated with recording each transfer. In order to issue an MBS, however, the issuer was and is required by law and industry standards to record (and pay recording fees on) every assignment of a mortgage loan from origination through deposit in a securitization trust. Faced with this dilemma, Wall Street, including Defendant BOA, simply wrote its own rules and created MERSCORP and MERS, ignoring property laws throughout the United States, including Texas.

**C.  How MERS Works**

26.    MERS is a subsidiary of MERSCORP. MERSCORP is owned by various mortgage banks, title companies, and title insurance companies, including Defendant BOA. When a lender which is a "member" of MERS makes a mortgage loan, the lender instructs the title company to show not only the lender but also MERS, as "mortgagee" under a mortgage and "beneficiary" under a deed of trust. MERS then shows up in the deed records as a "grantee."

27.    When the lender sells the note, or transfers the servicing rights, MERS remains as a "mortgagee" under a mortgage or "beneficiary" under a deed of trust and a "grantee" in the deed records. The purchaser of the note, or successor servicer, agrees at the time of acquisition of

[5] *In Re Agard*, 444 BR 231, 247 (E.D.N.Y. 2011).
[6] Unlike agency MBSs, non-agency MBSs are not typically guaranteed against credit loss.

9

its rights to notify MERS when the note is paid so that MERS can "release" its lien and the lien

of the original lender. MERS has described its role as follows:

> [MERS] and MERSCORP, Inc. were developed by the real estate industry to serve as the mortgagee of record and operate an electronic registration system for tracking interests in mortgage loans. . . Specifically, the MERS® System tracks the transfers of mortgage servicing rights and beneficial ownership interests in mortgage loans on behalf of MERS Members.
>
> The promissory note is a negotiable instrument under Article 3 of the Uniform Commercial Code, and originating lenders routinely sell these notes on the secondary markets to investors. "The ability of the lender to replenish their capital by selling loans in the secondary market is what makes money accessible for home ownership."
>
> ****
>
> At the origination of the loan by a lender who is a MERS Member, the lender takes possession of the note (and becomes the holder of the note), and the borrower and lender designate MERS (as the lender's nominee) to serve as the mortgagee or beneficiary of record. The lender's secured interest is thus held by MERS... Rules, which are incorporated into all MERS' agreements with its members, provide that members "shall cause Mortgage Electronic Registration System, Inc. to appear in the appropriate public records as the mortgagee of record with respect to each mortgage loan that the Member registers on the MERS® System."
>
> Accordingly, when a MERS Member originates a loan, the original lender and the borrower contractually agree in the mortgage that MERS will be the mortgagee and will serve as nominee for the lender and its successors and assigns. In the event of a default on the loan, MERS as the beneficiary or mortgagee, is authorized to foreclose on the home. After the borrower signs the mortgage agreement, it is recorded in the public, local land records with MERS as the named beneficiary or mortgagee.
>
> The MERS Member then registers the mortgage loan information from the security instrument on the MERS® System. When the beneficial interest in a loan is sold, the promissory note is still transferred by an endorsement and delivery from the buyer to the seller, but MERS Members are obligated to update the MERS® System to reflect the change in ownership of the promissory note.

So long as the sale of the note involves a MERS Member, MERS remains the named mortgagee of record, and continues to act as the mortgagee, as the nominee for the new beneficial owner of the note (and MERS' Member). The seller of the note does not and need not assign the mortgage because under the terms of that security instrument, MERS remains the holder of title to the mortgage, that is, the mortgagee, as the nominee for the purchaser of the note, who is then the lender's successor and/or assign. Accordingly, there is no splitting of the note and mortgage for loans in the MERS® System.  If, however, a MERS' Member is no longer involved with the note after it is sold, an assignment from MERS to the party who is not a MERS Member is executed by MERS, that assignment is recorded in the County Clerk's office where the real estate is located, and the mortgage is "deactivated" from the MERS® System.[7]

28.     MERS's assertion that the subsequent assignment of notes secured by a deed of trust does not trigger a duty to file a notice of the assignment is false. Section 192.007 of the Texas Local Government Code requires that, in order to release, transfer, assign or take any other action "relating to an instrument that is filed, registered, or recorded in the office of the county clerk, **a person must file, register, or record another instrument relating to the action in the same manner as the original instrument was required to be filed, registered, or recorded.**" [emphasis added]   Plaintiffs believe and allege that MERS violated this duty millions of times in Texas alone.

**D. The MERS Fallacy**

29.     According to MERS, it is the "mortgagee" or "beneficiary" of record in more than 65 million mortgages filed in the deed records of counties throughout the United States. MERS, however, does not actually have a security interest in the real property that is the subject of such mortgages or deeds of trust. In MERS's own words:

MERS has no interest at all in the promissory note evidencing the

---

[7]  *Mortgage Electronic Registration Systems, Inc. v. Nebraska Dept. of Banking and Fin.,* 704 N.W.2d 784 (Neb. 2005), Brief of Appellant at 11-12 (citations omitted).

mortgage loan. MERS has no financial or other interest in whether or not a mortgage loan is repaid…

MERS is not the owner of the promissory note secured by the mortgage and has no rights to the payments made by the debtor on such promissory note…MERS is not the owner of the servicing rights relating to the mortgage loan and MERS does not service loans. **The beneficial interest in the mortgage (or the person or entity whose interest is secured by the mortgage) runs to the owner and holder of the promissory note.** In essence, MERS immobilizes the mortgage lien while transfers of the promissory notes and servicing rights continue to occur. (citation omitted).[8]

30.     MERS has also admitted that, under its agreement with its mortgagee-lender members, MERS **"cannot exercise, and is contractually prohibited from exercising, any of the rights or interests in the mortgages or other security documents"** and has **"no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans."[9]**

31.     At this point one might ask how MERS can be the "mortgagee" in a mortgage or "beneficiary" of a deed of trust as to which the beneficial interest "runs to the owner and holder of the promissory note."[10] Plainly, it cannot. As one court has observed:

MERS and its partners made the decision to create and operate under a business model that was designed in large part to avoid the requirements of the traditional mortgage recording process. This Court does not accept the argument that because MERS may be

---

[8] *Mortgage Electronic Registration Systems, Inc. Nebraska Dept. of Bnkng and Fin.,* 704 N.W.2d 784 (Neb. 2005), Brief of Appellant at 11-12 (emphasis added). MERS does not explain how it can be a "mortgage lien" holder or how it can "inoculate" loans "against future assignments" while simultaneously insisting that "MERS is not the owner of the promissory note secured by the mortgage and has no rights to the payments made by the debtor on such promissory note" and "is not the owner of the servicing rights relating to the mortgage loan."

Also in question in cases pending in other jurisdictions is MERS's assertion that it has the authority to assign the note and mortgage to subsequent purchasers and the authority to appoint substitute trustees under the deeds of trust in which MERS appears as the "beneficiary" or "mortgagee."

[9] *Id.* at 10 (emphasis added).

[10] *Id.* at 11-12.

involved with 50% of all residential mortgages in the country, that is reason enough for this Court to turn a blind eye to the fact that this process does not comply with the law.

**** 

Aside from the inappropriate reliance upon the statutory definition of "mortgagee," MERS's position that it can be both the mortgagee and an agent of the mortgagee is absurd, at best.

**** 

This Court finds that MERS's theory that it can act as a "common agent" for undisclosed principals is not supported by the law. The relationship between MERS and its lenders and its distortion of its alleged "nominee" status was appropriately described by the Supreme Court of Kansas as follows: "The parties appear to have defined the word [nominee] in much the same way that the blind men of Indian legend described an elephant – their description depended on which part they were touching at any given time." *Landmark Nat'l Bank v. Kesler*, 216 P.3d 158, 166-67 (Kan. 2010).[11]

32.     With regard to the legal accuracy of MERS's recitation that it is the "mortgagee"

or "beneficiary," one scholar has stated:

MERS and its members use false documents to avoid paying recording fees to county governments. At the most simple level, mortgages and deeds of trust recorded at origination represent that MERS is the mortgagee or deed of trust beneficiary. Taking the appellate decisions in Arkansas, Kansas, Maine, and Missouri at face value, MERS recorded mortgages contain a false statement. While it is true that MERS recorded mortgages and deeds of trust also have qualifying language suggesting that MERS is also a "nominee," the representation that MERS is the owner of the lien is not some innocuous legalism. It causes county recorders that maintain grantor-grantee indexes to list MERS in the chain of title for the land. The false designation of MERS as a mortgagee or beneficiary creates a false lead in the true chain of title defeating an essential purpose of recording mortgages and deeds of trust.

But perhaps even more troubling are the documents recorded in the name of MERS later in the life of mortgage loans. Recall that MERS' business model does not include actually recording documents relating to its purported ownership itself. Instead, it allows employees of mortgage servicing companies and law firms to do so on its behalf. MERS has an internet web page where

---

[11]    *In Re Agard*, 444 BR 231 (E.D.N.Y. 2011).

mortgage servicers and law firms can enter names of their own employees to automatically produce a boilerplate "corporate resolution" that purports to designate the servicers' and law firms' employees as certifying officers of MERS with the job title of assistant secretary and/or vice president. These servicer and law firm employees then sign and record documents such as mortgage assignments, substitution of deed of trust trustees, and substitutions of deed of trust beneficiaries—all including the representation that they are a MERS vice president or assistant secretary. Some states require that the individual signing a document conveying an interest in land have the job title of vice president or higher. Surely this policy is to prevent mistakes, confusion, and disputes over land ownership. But many servicer and law firm employees use the "vice president" title even when it is not required—perhaps because it just sounds better.

Only, it is not true. The representation that employees of mortgage servicing companies and foreclosure law firms are "vice presidents" of MERS is false.

*****

County recorders deserve a fair hearing if they were to request payment of recording fees for assignments avoided through use of documents containing these false statements. Recording of these legally and factually false statements caused a reduction in the revenue that county governments would have collected from mortgage financiers. MERS itself used projections of this reduction in revenue in its sales pitches and marketing material. Indeed the studies done by accountants that justified the creation of MERS show how use of the MERS system—which entailed recording false documents—would cause a reduction in fees paid to counties.[12]

33.     Each of the Defendants filed or caused to be filed deeds of trust containing these legally and factually false statements in violation of Texas law. Defendants MERS, MERSCORP, and BOA also released, transferred, assigned or took other action relating to such deeds of trust without ensuring that instruments memorializing such action or actions were filed, registered, or recorded using another instrument relating to the action "in the same manner as the

---

[12]     Christopher L. Peterson, *Two Faces: Demystifying the Mortgage Electronic Registration System's Land Title Theory*, 53 WILLIAM & MARY L. REV. 111 (2011).

original instrument was required to be filed, registered, or recorded."[13] Such conduct caused a substantial reduction in the revenue that Plaintiffs should have collected had Defendants complied with Texas law, and recorded all subsequent releases, assignments, transfers, and other activities related to the original deed of trust identifying MERS as the "beneficiary" of the deed of trust.

34.     The MERS System has created massive confusion as to the true owners of beneficial interests in mortgage loans and mortgages throughout the United States, in Texas, and in Bexar County. In short, the MERS System has destroyed the reliability of the public recording system in the United States, the State of Texas, and Bexar County, thus damaging a valuable property of the Plaintiffs; as well as wrongfully depriving the Plaintiffs of a substantial amount of revenue.

**E.   Texas County Deed Records**

35.     Section 11.004 of the Texas Property Code requires that county clerks in the State of Texas perform the following tasks: (1) correctly record, as required by law, within a reasonable time after delivery, any instrument authorized or required to be recorded in that clerk's office that is proved, acknowledged, or sworn to according to law; (2) give a receipt, as required by law, for an instrument delivered for recording; (3) record instruments relating to the same property in the order the instruments are filed; and (4) provide and keep in the clerk's office the indexes required by law.

---

[13] TEX. LOC. GOV'T CODE § 192.007.

36.     Section 193.003 of the Texas Local Government Code requires that a county clerk maintain "a well-bound alphabetical index to all recorded deeds, powers of attorney, mortgages, and other instruments relating to real property" with "a cross-index that contains the names of the grantors and grantees in alphabetical order." Under policies in effect for many years, employees of the Bexar County Clerk's Office, as well as the other Class Members, recorded as a "grantee" any person identified as a "lender," "beneficiary," or "grantee" in a deed of trust.

37.     Prior to the advent of the MERS System, the lender, here BOA, would normally be identified in the deed of trust as the "beneficiary" of the deed of trust.  Following the implementation of the MERS system by Defendant BOA and other lenders, however, this changed. In the deed of trust attached hereto as Exhibit A, filed in the Bexar County deed records on January 3, 2012, Defendant BOA is identified as the lender and MERS is identified as the beneficiary. Likewise, in the deed of trust attached hereto as Exhibit B, filed in the Bexar County deed records on December 24, 2002, Countrywide is identified as the lender and MERS is identified as the beneficiary.

38.     Other deeds of trust filed in the Plaintiffs' deed records often use the same or essentially the same language:

> The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.

In yet another section of these deeds of trust, MERS is identified as follows:[14]

---

[14]     If this description of MERS's status under deeds of trust in which it appears as the "beneficiary" seems somewhat imprecise, that is because it is. MERS cannot be the "beneficiary" of a deed of trust which secures to **another**, *i.e.*, the Lender, (i) the repayment of the Loan, and all renewals,

> "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument**. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679·MERS.

Despite its denomination as such, MERS is not the beneficiary of such deeds of trust, as the word "beneficiary" has been used and interpreted in deeds of trust in Texas for over 100 years.  The explanation for why MERS is not identified only as the "nominee" or "agent" of the lender is simple — in order for the MERS System to work, MERS had to misrepresent its interests in the deeds of trust of which it purports to be a beneficiary in order to be identified as the "grantee" in Plaintiffs' deed records.

39.    For over 100 years, Texas law has provided that the grantee or beneficiary of a deed of trust is the lender on the note secured by the deed of trust.[15] So long as a debt exists, the "security will follow the debt," and the assignment of the debt carries with it the rights created by the deed of trust securing the note.[16]   Deed records in Texas were created to provide public notice of the identity of the person whose interest is protected by a deed of trust. Once properly filed, a deed of trust is "notice to all persons of the existence of the instrument," protects the lender's security interest against creditors of the grantor, and places subsequent purchasers on notice that the property is encumbered by a security interest.

40.    In order to be shown in deed records in Texas as a "grantee," and therefore a party whose interest is protected by recording, one must ordinarily be identified in a deed of trust as a

---

extensions and modifications of the Note, and (ii) the performance of the Borrower's covenants and agreements under the Security Instrument and the Note.

[15] *See Lawson v. Gibbs*, 591 S.W.2d 292, 294 (Tex. Civ. App.-Houston [1st. Dist.] 1979, writ ref'd n.r.e.).

[16]  A deed of trust in Texas creates a lien in favor of the lender; it does not operate as a transfer of title. This has been the law in Texas for more than a century. *See McLane v. Paschal*, 47 Tex. 365, 369 (1877); *see also Johnson v. Snell*, 504 S.W.2d 397, 399 (Tex. 1973).

"lender," "mortgagee," "grantee," or "beneficiary" of the deed of trust. As noted above,

however, MERS has admitted that it is none of these. According to MERS:

> MERS has no interest at all in the promissory note evidencing the mortgage loan. MERS has no financial or other interest in whether or not a mortgage loan is repaid. . .
>
> MERS is not the owner of the promissory note secured by the mortgage and has no rights to the payments made by the debtor on such promissory note...MERS is not the owner of the servicing rights relating to the mortgage loan and MERS does not service loans. **The beneficial interest in the mortgage (or the person or entity whose interest is secured by the mortgage) runs to the owner and holder of the promissory note.** In essence, MERS immobilizes the mortgage lien while transfers of the promissory notes and servicing rights continue to occur. (citation omitted).[17]

41.    Here is MERS' conundrum: if MERS is acting only as a "nominee" or "agent" of

the lender, MERS itself has no security interest in the real property that is the subject of the deed

of trust, and therefore, MERS has no rights which allow it to assert that it is a beneficiary under

the deed of trust. But unless MERS identifies itself as a "beneficiary," MERS will not be

designated as a "grantee" in the deed records.  Unless MERS is designated as a "grantee" in the

deed records, the MERS System will not work, because the protections of the recording statutes

would not be extended to MERS. For MERS and its member institutions the solution was simple

— ignore the law and identify MERS as a "beneficiary" of an instrument in which it holds no

beneficial interest of any kind. In that way, county clerks, including the Bexar County Clerk and

the county clerks of the Class Members, would identify MERS as a "grantee" in their deed

records, and MERS and its associates could take unfair advantage of the recording system

without paying all of the requisite fees.

42.    As demonstrated by the criminal and civil penalties for filing false or deceptive

---

[17] *Mortgage Electronic Registration Systems, Inc. Nebraska Dept. of Bnkng and Fin.,* 704 N.W.2d 784 (Neb. 2005), Brief of Appellant at 11-12 (emphasis added).

real estate liens, Texas public policy favors a reliable functioning public recordation system to avoid destructive breaks in the chain of title, confusion as to the true identity of the holder of a note, fraudulent foreclosures, and uncertainty as to title when a home is sold. The MERS System has all but destroyed the accuracy and reliability of the public recordation system throughout the United States, including Texas.[18]

### F.   Other Misconduct of Defendants

#### a.       MERSCORP AND MERS

43.     MERSCORP is the operating company that owns and operates the MERS System, charges and receives all fees for use of the MERS System, establishes and promulgates Rules of Membership in MERSCORP for those lenders and loan servicers desiring to become members for purposes of utilizing the MERS System, determines the *bona fides* of membership applications in MERSCORP, and is responsible for the day-to-day operation of the MERS

---

[18]   To understand the scale and seriousness of the institutional failures of MERS and MERSCORP and the role of these entities in creating chaos in the U.S. recordation systems, one need look no further than the disaster MERS has made of the foreclosure process. On April 12, 2011, MERSCORP and MERS entered into a *Consent Order* with several federal agencies. According to the findings contained in the *Consent Order*, MERS and MERSCORP "(a) have failed to exercise appropriate oversight, management supervision and corporate governance, and have failed to devote adequate financial, staffing, training, and legal resources to ensure proper administration and delivery of services to Examined Members; (b) have failed to establish and maintain adequate internal controls, policies, and procedures, compliance risk management, and internal audit and reporting requirements with respect to the administration and delivery of services to Examined Members" and, that "MERS and MERSCORP engaged in unsafe or unsound practices that expose[d] them and Examined Members to unacceptable operational, compliance, legal, and reputational risks." *Consent Order*, April 12, 2011, OCC No. AA-EC-11-20; Board of Governors Docket Nos. 11-051-B-SC-1 and 11-051-B-SC-2; FDIC-11-194b; OTS No. 11-040; FHFA No. EAP-11-01 at 4-5.

In response to the hundreds of cases filed nationwide against MERSCORP and MERS for wrongful foreclosure, MERSCORP and MERS recently promulgated new policies that include the mandate that "[n]o foreclosure proceeding may be initiated, and no Proof of Claim or Motion for Relief from Stay (Legal Proceedings) in a bankruptcy may be filed, in the name of Mortgage Electronic Registration Systems, Inc. (MERS)."

System. Accordingly, the acts of misconduct alleged herein against MERS are alleged as well against MERSCORP as the owner and operator of MERS.

44.    Plaintiff would show that at all times material hereto, MERS has been a wholly-owned subsidiary of MERSCORP. MERS has been utilized by MERSCORP: (a) to shift liability away from MERSCORP and its shareholders for the violations of Texas statutes and law as set forth herein; (b) to perpetrate a fraud in the form of wrongfully identifying MERS as the "beneficiary," "mortgagee," "grantee," "lender," or "grantor" in deeds of trust and other documents filed in the deed records of Plaintiffs; (c) to evade the ongoing obligation to maintain the accuracy of deeds of trust and other documents filed in the deed records of Plaintiffs; and (d) to justify the wrongs set forth herein. Accordingly, MERSCORP is liable for all of the acts of misconduct alleged in this complaint against MERS.

45.    MERSCORP established MERS without sufficient capitalization in view of the business in which MERS engaged. Moreover, MERSCORP failed to retain an appropriate number of employees. MERS opted instead to have its members' employees appointed as "Vice-Presidents" or "Secretaries" of MERS for purposes of having the members, including Defendant BOA, purport to take actions as "MERS" through members' employees, which were falsely or improperly denominated as offices of MERS.

46.    MERS is effectively a "front" organization for its members, including Defendant BOA. MERS purported to create a private mortgage registry, but has failed to properly oversee that registry or enforce its own rules on the members that participate in the registry. For example, rather than maintaining an adequate staff to provide MERS' services, MERS operates through a network of over 20,000 non-employee fictitious "corporate officers," including employees of Defendant BOA, who cause MERS to act without any meaningful oversight from anyone who

works at MERS. Instead of meaningful internal controls, MERS relies on an "honor system" that fails to ensure the integrity of its registry. The lack of internal controls has resulted in MERS' failure to follow its own rules regarding the recordation of the transfer of mortgage loans and security interests in its database by its members, and the proper institution of foreclosure proceedings.

47.     The 20,000 individuals who identify themselves as MERS' corporate officers for the purposes of executing instruments on behalf of MERS are actually employees of MERS' members, including Defendant BOA, rather than MERS. These fictitious "corporate officers" of MERS are not paid any compensation by MERS, nor does MERS supervise or direct, or have the right to supervise or direct, any of the work performed by its fictitious "corporate officers." MERS fictitious "corporate officers" do not seek, nor do they receive any direct instruction, permission or approval from MERS to act on MERS' behalf.  These fictitious "corporate officers" act on behalf of MERS in foreclosing mortgages and deeds of trust in which MERS is identified as a "mortgagee" or "beneficiary." In this manner, MERS operates like a puppet whose strings are pulled by its members' employees, including Defendant BOA. Members' employees cause MERS to take various legally operative actions, such as assigning mortgages, signing checks, and foreclosing on homeowners. Members purchase corporate seals from MERS at a cost of $25 each for the members' employees who act as fictitious "corporate officers" of MERS. While MERS purports to act as agent for the holder or owner of a note, each act MERS performs on such entity's behalf is actually done by that entity's own employee, acting as a fictitious MERS "corporate officer."  Moreover, MERS encourages the widespread use of its corporate authority and performs no meaningful oversight over the acts of these fictitious "corporate

officers". This use of member employees as fictitious "corporate officers" of MERS obscures the identity of the real entity that owns the borrowers' debt.

48.    The structure of MERSCORP and MERS, and the fact that they undertake virtually no action except through the members of MERS, including Defendant BOA, justifies the Court in ignoring the corporate fiction and imposing liability for the conduct of MERSCORP and MERS on the shareholders of MERSCORP, including Defendant BOA.

**b.    Bank of America, National Association (individually, and as successor-in-interest for Countrywide Home Loans, Inc.)**

49.    In addition to the wrongful conduct of BOA alleged elsewhere herein, Defendant BOA engaged in actionable conduct in concert with MERS which included, but is not limited to: originating loans secured by deeds of trust listing MERS as "beneficiary," which BOA filed or caused to be filed in the deed records of Plaintiff, and which BOA knew or should have known would result in the Plaintiffs' county clerks listing MERS as the "grantee" in its deed records indices. The designation of MERS as beneficiary" is false, and BOA knew or should have known that such designation of MERS was false at the time BOA filed or caused to be filed the deeds of trust described above.

50.    BOA has released, transferred, assigned, or taken other action relating to deeds of trust and associated instruments identified herein that BOA had previously filed or caused to be filed in the Bexar County deed records and the deed records of other Class members; but in violation of Texas law, BOA failed to subsequently file, register, or record another instrument in the Plaintiffs' deed records relating to such actions in the same manner as the original instrument was required to be filed, registered, or recorded.

51.     In addition to BOA's direct liability for its misconduct alleged herein, Plaintiffs seek a determination from the Court that it is appropriate to pierce the corporate veil of MERSCORP and MERS in this suit, and hold BOA liable as a shareholder of MERSCORP for the misconduct of MERSCORP and its subsidiary, MERS.

52.     Recognizing the corporate existence of MERSCORP and MERS separate from their shareholders, including BOA, would bring about a significant injustice or inequitable result, and would be an unjust cloak for fraud or illegality in which the shareholders willingly participated. MERSCORP and MERS were undercapitalized in light of the nature and risk of their business. The corporate fiction is being used to unjustly shield the shareholders of MERSCORP and MERS from their wrongful conduct, in which the shareholders were willing participants.  The corporate fiction is being used as a means of perpetrating fraud, as a mere tool or business conduit for shareholders such as BOA, as a means of evading existing legal obligations, and to circumvent statutory obligations.

## VI.
## CAUSES OF ACTION

### A.   Violation of §12.002 of the Texas Civil Practice & Remedies Code – All Defendants

53.     Section 12.002 of the Texas Civil Practice & Remedies Code ("CPRC") provides:

    i)      A person may not make, present, or use a document or other record with:

        (1)      knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;

        (2)      intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal

Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and

 (3) intent to cause another person to suffer:

  (B) financial injury…

 ii) A person who violates Subsection (a) or (a-1) is liable to each injured person for:

 (1) the greater of:

  (A) $10,000; or

  (B) the actual damages caused by the violation;

 (2) court costs;

 (3) reasonable attorney's fees; and

 (4) exemplary damages in an amount determined by the court.

54. Defendants knowingly filed or caused to be filed deed records containing false statements in order to avail themselves of the benefits afforded by recording real estate liens and deeds of trust with the Bexar County Clerk and the county clerks of the other Class members. (*see* Exhibit A and Exhibit B) Bexar County and the other Class Members are governmental entities within the meaning of §37.01 of the Texas Penal Code. Specifically, Defendant filed real estate liens and deeds of trust designating MERS as the "beneficiary," when in fact MERS had no beneficial interest in the promissory notes underlying either the real estate liens or the deeds of trust. Defendants knew at the time they filed or caused to be filed these real estate liens and deeds of trust that MERS had no beneficial interest of any kind in the real estate liens, deeds of trust or the underlying promissory notes. The Defendants knew at the time they filed or caused to be filed these instruments that they falsely represented under oath that MERS had an interest in the promissory notes underlying the real estate liens and deeds of trust. The Defendants

further intended that the public, Bexar County and the other Class Members rely on the fact that MERS had an interest in the real estate notes, liens and deeds of trust in which MERS was identified as a beneficiary, when this was false.  The Defendants filed the false instruments under oath with the intent to injure Bexar County and the other Class Members by depriving the Plaintiffs of the filing fees to which they were rightfully entitled.

55.    One of the stated purposes of using the MERS system was to avoid incurring filing fees for the recording of transfers and assignments of real estate lien notes.  In promotional materials MERSCORP cited the avoidance of paying filing fees for the transfer and assignment of real estate lien notes as an advantage of becoming a shareholder in MERSCORP.  By wrongfully designating MERS as a beneficiary on deeds of trust, the Defendants clearly had the intent to avoid paying filing fees for filing transfers and assignments of the real estate lien notes secured by deeds of trust designating MERS as the beneficiary; and thereby, to intentionally deprive Bexar County and the other Class Members of the filing fees for the filing of transfers and assignments mandated by §192.007.  As a result, the intent to injure Plaintiffs can be inferred from the misconduct of Defendants.

56.    In addition to being a violation of Texas Penal Code §37.10, Defendants' misconduct described herein violated §12.002 of the CPRC for which Plaintiffs seek judgment against Defendants, jointly and severally, in the amount of $10,000 per violation, together with attorney's fees, court costs, and exemplary damages in an amount to be determined by the Court.

**B.  Violation of Texas Local Government Code § 192.007**

57.    For almost 300 years, common law and statute have required or permitted the recording of instruments affecting title to real property for the primary purpose of giving notice of the interests of property owners and real estate lien holders to the public. One of the primary

purposes of recording documents affecting the title to real property is to make information pertaining to that property available to the general public, and thus to protect persons from fraud. Because real estate is so tightly woven into the fabric of the U.S. financial system, stability and certainty regarding titles to real property is essential to the efficient functioning of the markets. The Texas Legislature recognized the importance of accurate and reliable real estate deed records when it enacted §192.007, requiring all who took advantage of the protections afforded by the real estate deed records to file of record an instrument memorializing all subsequent actions relating to the initial instrument that they had filed.

58.    In order to perfect a security interest for a lien note on real property in Texas as to third parties who were strangers to the initial transaction, the instrument (typically a deed of trust) creating the security interest for the real estate lien note must be filed of record. Filing, in the first instance, however, is not mandatory. Nonetheless, once the record of a security interest in a real estate lien note is filed of record with a county clerk, future actions with respect to the transfer, assignment, etc. of the real estate lien note reflected in the instrument perfecting the security interest must by statute be filed with the county clerk in order to ensure the continued accuracy and reliability of the real property records for the benefit of the parties and the public at large.

59.    Section 192.007 of the Texas Local Government Code provides:

**TEX. LOC. GOV'T CODE §192.007**
**Records of Releases and Other Actions**

(a)    To release, transfer, assign, or take another action relating to an instrument that is filed, registered, or recorded in the office of the county clerk, a person must file, register, or record another instrument relating to the action in the same manner as the original instrument was required to be filed, registered, or recorded.

(b)   An entry, including a marginal entry, may not be made on a
previously made record or index to indicate the new action.

60.   The Defendants willfully and intentionally violated §192.007 of the Texas Local

Government Code by failing to record an instrument reflecting all subsequent releases, transfers,

assignments, and other actions relating to the real estate lien notes secured by the deeds of trust

in which they, separately or jointly, identified MERS as the "beneficiary."

61.   Damages to Plaintiff have been proximately caused by the conduct of Defendants

as described herein, for failing to adhere to the mandatory provisions of §192.007, for which

Plaintiff seeks judgment of the Court. The real property records of Bexar County and the other

Class Members are the primary means for the public and Plaintiffs to determine the true

beneficial ownership of real estate lien notes and security instruments, and such records have

been rendered inaccurate and unreliable by the misconduct of the Defendants.  By failing to

adhere to the mandatory provisions of §192.007, Defendants have caused damage to the tangible

property of Plaintiffs, i.e. the real property records, which are a valuable asset of Bexar County

and the other Class Members.  The damages to Bexar County and the other Class Members can

be measured by the filing fees that should have been received by Plaintiff had all of the releases,

transfers, assignments and other actions relating to the real estate lien notes, deeds of trust and

other instruments described herein been filed, registered, or recorded in the office of the

Plaintiffs' county clerks in the same manner as the original instruments were required to be filed,

registered, or recorded, in accordance with the mandates of §192.007.   In addition, the

Defendants should be required by the Court to file all instruments reflecting assignments,

transfers and other actions taken with respect to the original instruments that Defendants filed, in

the same manner as the original instruments initially filed by the Defendants were required to

have been filed.

C. **Unjust Enrichment – MERSCORP, MERS, and BOA**

62.    MERSCORP and MERS have been unjustly enriched by their misconduct described above, and by their receipt of fees charged to MERS's members for utilizing the MERS database to track mortgage loans and mortgage transfers which would otherwise have been recorded in the deed records of Bexar County and the other Class Members. Defendant BOA is liable to Bexar County and the other Class Members for the damages alleged herein as a shareholder in MERSCORP and MERS under the theory of alter-ego, or otherwise under the theory of piercing the corporate veil of MERSCORP and/or MERS.

63.    Damages to Bexar County and the other Class Members have been proximately caused by Defendants' misconduct described herein.  This damage should measured by the filing fees that would have been received by Plaintiffs had all of the transfers and assignments described herein been recorded; or in the alternative, as to MERS and MERSCORP, as measured by the fees received by MERSCORP and MERS from its shareholders such as BOA utilizing the MERS database for tracking the mortgage loans and mortgages not recorded in the deed records of Plaintiffs, for which damages Plaintiffs seek the judgment of the Court.

D. **Unjust Enrichment – Bank of America**

64.    Defendant BOA has been unjustly enriched by avoiding the filing fees associated with recordation of instruments memorializing transfers and assignments of real estate lien notes that would otherwise have been recorded, but for its participation in MERS and the violation of Texas law as described herein.

65.    Damages to Bexar County and the other Class Members have been proximately caused by the conduct of Defendant BOA, measured by the revenue from filing fees that would have been received by Plaintiffs had instruments memorializing all of the transfers and

assignments described herein, and in which BOA participated, been recorded in the Plaintiffs' deed records, rather than exclusively in the MERS database, for which damages Plaintiffs seek judgment of the Court.

### E. Negligent Misrepresentation – All Defendants

66.     In the course of their business, Defendants negligently misrepresented the true beneficial owner of real estate lien notes and related deeds of trust filed by them in the deed records of Bexar County and the other Class Members.  The Defendants made these negligent misrepresentations in the course of real estate transactions in which they had a pecuniary interest for the purpose of avoiding the payment of filing fees for the recordation of subsequent transfers and assignments of these real estate lien notes and related deeds of trust.  The Defendants misrepresented the true beneficial owner of real estate lien notes and related deeds of trust so that Bexar County and the other Class Members would index MERS as the "grantee" in these real estate transactions.

67.     Subsequently, Defendants negligently failed to properly record all releases, transfers, assignments, or other actions relating to instruments Defendants had previously filed, registered, or recorded in the deed records of Plaintiffs in the same manner as the original instruments were required to be filed, registered, or recorded.  The misrepresentations of Defendants as to the true beneficial owner of real estate lien notes and related deeds of trust caused property damage to Plaintiffs by causing the deed records of Bexar County and the other Class Members to be inaccurate and unreliable, as well as depriving the Plaintiffs of revenue they should have earned if the subsequent transfers and assignments had been filed of record as required by law.

68.     The negligence of Defendants set forth herein was a proximate cause of damages to Plaintiffs for which they seek the judgment of the Court against Defendants.

**F.  Grossly Negligent Misrepresentation – All Defendants**

69.     In the course of their business, Defendants engaged in gross negligence by misrepresenting the true beneficial owner of real estate lien notes and related deeds of trust filed by them in the deed records of Bexar County and the other Class Members.  The Defendants made these misrepresentations in the course of real estate transactions in which they had a pecuniary interest for the purpose of avoiding the payment of filing fees for the recordation of subsequent transfers and assignments of these real estate lien notes and related deeds of trust. The Defendants misrepresented the true beneficial owner of real estate lien notes and related deeds of trust so that Bexar County and the other Class Members would index MERS as the "grantee" in these real estate transactions.

70.     Subsequently, Defendants engaged in gross negligence by failing to properly record all releases, transfers, assignments, or other actions relating to instruments Defendants had previously filed, registered, or recorded in the deed records of Bexar County and the other Class Members in the same manner as the original instruments were required to be filed, registered, or recorded.  The misrepresentations of Defendants as to the true beneficial owner of real estate lien notes and related deeds of trust caused property damage to Plaintiffs by causing the deed records of Bexar County and the other Class Members to be inaccurate and unreliable, as well as depriving the Plaintiffs of revenue they should have earned if the subsequent transfers and assignments had been filed of record as required by law.

71.     The gross negligence of Defendants set forth herein was a proximate cause of damages to Plaintiffs for which they seek the judgment of the Court against Defendants.

### G. **Negligent Undertaking – All Defendants**

72.     Defendants negligently undertook to file deeds of trust securing real estate lien notes in the deed records of Bexar County for the borrowers and subsequent purchasers of the real estate lien notes. Such negligence included, but was and is not limited to filing false and deceptive records in the deed records of Bexar County and the other Class Members. Further, Defendants failed to properly record all releases, transfers, assignments, or other actions relating to the original instruments Defendants filed or caused to be filed, registered, or recorded in the deed records of Bexar County and the other Class Members in the same manner as the original instruments were required to be filed, registered, or recorded.

73.     The misrepresentations of Defendants as to the true beneficial owner of real estate lien notes and related deeds of trust caused property damage to Plaintiffs by causing the deed records of Bexar County and the other Class Members to be inaccurate and unreliable, as well as depriving the Plaintiffs of revenue they should have earned if the subsequent transfers and assignments had been filed of record as required by law.

74.     The negligent undertaking of Defendants set forth herein was a proximate cause of damages to Plaintiffs for which they seek the judgment of the Court against Defendants.

### H. **Grossly Negligent Undertaking – All Defendants**

75.     Defendants engaged in gross negligence when they undertook to file deeds of trust securing real estate lien notes in the deed records of Bexar County and the other Class Members for the borrowers and subsequent purchasers of the real estate lien notes. Such gross negligence included, but was and is not limited to, filing false and deceptive records in the deed records of Bexar County and the other Class Members. Further, Defendants failed to properly record all releases, transfers, assignments, or other actions relating to the original instruments

Defendants filed or caused to be filed, registered, or recorded in the deed records of Plaintiffs in the same manner as the original instruments were required to be filed, registered, or recorded.

76.     The misrepresentations of Defendants as to the true beneficial owner of real estate lien notes and related deeds of trust caused property damage to Plaintiffs by causing the deed records of Bexar County and the other Class Members to be inaccurate and unreliable, as well as depriving the Plaintiffs of revenue they should have earned if the subsequent transfers and assignments had been filed of record as required by law.

77.     The grossly negligent undertaking of Defendants was a proximate cause of damages to Plaintiffs for which they seek the judgment of the Court against the Defendants.

**I.  Negligence Per Se**

78.     Defendants were negligent per se in the misconduct alleged herein. Such negligence per se included, but was and is not limited to:

> a.  violation of section 12.002 of the Texas Civil Practice & Remedies Code by filing false and deceptive records in the deed records of Bexar County, Texas and the other Class Members; and
>
> b.  violation of section 192.007 of the Texas Local Government Code by failing to properly record all releases, transfers, assignments, or other actions relating to instruments Defendants filed or caused to be filed, registered, or recorded in the deed records of Plaintiffs in the same manner as the original instruments were required to be filed, registered, or recorded.

79.     The misrepresentations of Defendants as to the true beneficial owner of real estate lien notes and related deeds of trust caused property damage to Plaintiffs by causing the deed records of Bexar County and the other Class Members to be inaccurate and unreliable, as well as depriving the Plaintiffs of revenue they should have earned if the subsequent transfers and assignments had been filed of record as required by law.  The provisions of CPRC §12.002 and Local Government Code §192.007 were enacted in part to prohibit the filing of deceptive real

estate lien records and to ensure that county deed records would be accurate and reliable. As a consequence, Bexar County and the other Class Members are within the class of persons each of these statutes is designed to protect.

80.     The negligence per se of Defendants set forth herein was a proximate cause of damages to Plaintiffs, for which they seek the judgment of the Court against the Defendants.

**J.  Gross Negligence Per Se**

81.     Defendants were grossly negligent per se in the misconduct alleged herein. Such gross negligence per se included, but was and is not limited to:

> a.  violation of section 12.002 of the Texas Civil Practice & Remedies Code by filing false and deceptive records in the deed records of Bexar County, Texas, and the other Class Members; and
>
> b.  violation of section 192.007 of the Texas Local Government Code by failing to properly record all releases, transfers, assignments, or other actions relating to instruments Defendants filed or caused to be filed, registered, or recorded in the deed records of Plaintiffs in the same manner as the original instruments were required to be filed, registered, or recorded.

82.     The misrepresentations of Defendants as to the true beneficial owner of real estate lien notes and related deeds of trust caused property damage to Plaintiffs by causing the deed records of Bexar County and the other Class Members to be inaccurate and unreliable, as well as depriving the Plaintiffs of revenue they should have earned if the subsequent transfers and assignments had been filed of record as required by law. The provisions of CPRC §12.002 and Local Government Code §192.007 were enacted in part to prohibit the filing of deceptive real estate lien records and to ensure that county deed records would be accurate and reliable. As a consequence, Bexar County and the other Class Members are within the class of persons each of these statutes is designed to protect.

33

83.     The gross negligence per se of Defendants set forth herein was a proximate cause of damages to Plaintiffs, for which it seeks the judgment of the Court against the Defendants.

**K.  Fraudulent Misrepresentation – All Defendants**

84.     Defendants engaged in fraudulent misrepresentation by recording, causing to be recorded, or approving the recording of instruments which misrepresent the true beneficial owner of notes and related deeds of trust filed by them in the deed records of Bexar County and the other Class Members, in that the instruments falsely state that MERS has a lien upon or interest in real property which MERS does not have in order to cause MERS to be indexed as a "grantor" or "grantee" in the Statutory Grantor/Grantee Indices maintained by Bexar County and the other Class Members.  In addition, Defendants engaged in fraudulent misrepresentation by releasing, transferring, assigning, or taking other action relating to instruments that they previously filed, registered or recorded in the offices of the county clerks of Plaintiffs without filing, registering or recording subsequent instruments relating to the actions in the same manner as the original instruments were required to be filed, registered or recorded.

85.     The Defendants engaged in the fraudulent misrepresentation with the explicit purpose of avoiding the payment of filing fees for the recordation of subsequent instruments required to be filed by law.  The misrepresentations of Defendants as to the true beneficial owner of real estate lien notes, deeds of trust and related instruments caused property damage to Plaintiffs by causing the deed records of Bexar County and the other Class Members to be inaccurate and unreliable, as well as depriving the Plaintiffs of revenue they should have earned if the subsequent transfers and assignments had been filed of record as required by law.

86.     The Defendants' fraudulent misrepresentations were a proximate cause of damages to Plaintiffs, for which they seek the judgment of the Court against the Defendants.

**L. Declaratory Judgment**

87.     Plaintiffs seek a judicial declaration that the filing of deeds of trust identifying MERS as a "beneficiary," or claiming that MERS has any other beneficial interest under a deed of trust, when in fact MERS has no beneficial interest in the note secured by such deed of trust, constitutes a violation of §51.901 of the Texas Government Code.

88.     Plaintiff also seeks a judicial declaration that the Defendants and each of them is liable to Bexar County and the other Class Members for having failed to properly record all releases, transfers, assignments, or other actions relating to instruments Defendants previously filed or caused to be filed, registered, or recorded in the deed records of Plaintiffs in the same manner as the original instruments were required to be filed, registered, or recorded pursuant to the mandates of §192.007 of the Local Government Code.

**M. Request for Injunctive Relief**

89.     Pursuant to CPRC §12.003, Bexar County seeks an order of the Court permanently enjoining Defendants from recording, causing to be recorded, or approving the recording of instruments which misrepresent the true beneficial owner of notes and related deeds of trust filed by them in the deed records of Bexar County and the other Class Members, including instruments that falsely state that MERS has a lien upon or interest in real property which MERS does not have in order to cause MERS to be indexed as a "grantor" or "grantee" in the Statutory Grantor/Grantee Indices maintained by Plaintiffs.  In addition, Defendants should be permanently enjoined from releasing, transferring, assigning, or taking other action relating to instruments that they previously filed, registered or recorded in the offices of the county clerks of Plaintiffs without filing, registering or recording subsequent instruments relating to the actions in the same manner as the original instruments were required to be filed, registered or recorded.

90.    In addition, Bexar County and the other Class Members seek an order of this Court requiring Defendants, jointly and severally, to correct the false and deceptive filings described herein by causing the recordation of corrective instruments setting forth the entire chain of title, including all subsequent transfers and assignments, for each instrument described herein.

### N. Exemplary Damages – All Defendants

91.    The conduct of each Defendant as set forth herein constituted fraud, malice, or gross negligence such that each Defendant is liable for exemplary damages for which Bexar County and the other Class Members seek the judgment of the Court against the Defendants.

92.    Plaintiffs further specifically plead that any limitation on amount of recovery of punitive damages as set out by §41.008 of the Texas Civil Practice & Remedies Code does not apply to the causes of action pled by Plaintiffs, in that forgery is specifically exempted from any limitation on the recovery of punitive damages.

### VII.
### CONSPIRACY

93.    Defendants and each of them conspired together in the actionable conduct alleged herein so as to make each of MERSCORP, MERS, and BOA liable for all damages suffered by Bexar County and the other Class Members. The conspiracy included these Defendants establishing: (a) an object to be accomplished; (b) a meeting of minds on the object or course of action; (c) one or more unlawful, overt acts; and (d) damages to Bexar County and the other Class Members as the proximate result. As a result, Plaintiffs seek damages against these Defendants jointly and severally.

## VIII.
## JURY DEMAND

94.    The Plaintiffs request trial by jury.

## IX.
## PRAYER

95.    Wherefore, premises considered, Plaintiffs request that Defendants be cited to appear and answer, and upon trial of this matter, that Plaintiffs be awarded damages as set forth above, as well as costs of bringing this action, including all court costs, attorneys' fees, and related expenses of bringing the action (including investigative expenses), pre- and post-judgment interest at the highest rate allowed by law, and for such other and further relief, in law and in equity, to which Plaintiffs may show themselves to be justly entitled.

Respectfully submitted,

**THE HERRERA LAW FIRM, INC.**
Frank Herrera Jr.
SBN:  09531000
Laura G. Tamez
SBN:  00793869
Jorge Herrera
SBN:  24044242
Riverview Towers
111 Soledad, Suite 1900
San Antonio, Texas  78205-2294
Telephone:   (210) 224-1054
Facsimile:   (210) 228-0887

By: _____
Frank Herrera Jr.
SBN:  09531000

**BEXAR COUNTY DISTRICT
ATTORNEY**
Susan Reed
SBN: 16687400
Edward Schweninger
SBN: 17876960
300 Dolorosa, Suite 5010
San Antonio, TX  78205-3030
Telephone:  (210) 220-2139
Facsimile:  (210) 220-2436

**EDWARD L. KURTH,
ATTORNEY AT LAW, P.C.**
Edward L. Kurth
SBN:  11768400
607 Bluff Cliff Drive
San Antonio, TX  78216
Telephone:  (210) 496-5904
Facsimile:  (210) 496-5131

**TOM RHODES LAW FIRM, P.C.**
J. Thomas Rhodes, III
SBN: 16820050
Robert E. Brzezinski
SBN:00783746
126 Villita Street
San Antonio, TX  78205
Telephone:  (210) 225-5251
Facsimile:  (210) 225-6545

**WIGINGTON RUMLEY DUNN, L.L.P.**
Joseph M. Dunn
SBN:  06245650
David L. Rumley
SBN:  00791581
Jeffrey G. Wigington
SBN:  00785246
601 Howard St.
San Antonio, TX  78212
Telephone:    (210) 487-7500
Facsimile:    (210) 487-7501

**ATTORNEYS FOR PLAINTIFF**